UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: _____

ANGELIQUE HENDERSON,

    Plaintiff,

vs.

MIAMI DADE POLICE
DEPARTMENT,

    Defendant.
_____/

### Complaint for Damages and Other Relief — Jury Trial Demanded

Plaintiff, Angelique Henderson, sues defendant, Miami Dade Police Department and as grounds shows:

### Introduction

1.  This is an action for discrimination and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Florida Civil Rights Act, §§ 760.01, *et seq.*, FLA. STAT. (2013) ("FCRA"), by Angelique Henderson, a black female police sergeant of Haitian descent who placed in the top 10% on defendant's promotional examination, yet she was never promoted while lower-ranking Hispanic and Caucasian males were promoted from beneath her. Plaintiff seeks all legal and equitable relief

available under both Title VII and the FCRA, as well as her costs, including reasonable attorneys' fees.

## Jurisdiction, Parties, Venue

2. This court has jurisdiction pursuant 28 U.S.C. § 1331 (federal question). The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The court has supplemental jurisdiction to determine the state claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the claims arose here and the defendant is subject to personal jurisdiction here.

4. Plaintiff, Angelique Henderson, is a natural person who, at all times material, was employed as a sergeant with the Miami Dade Police Department. She is protected by Title VII and the FCRA because:

    a. she is black;

    b. she is female;

    c. she is of Haitian descent, and;

    d. she engaged in protected activity under Title VII and the FCRA.

5. Miami-Dade County is a political subdivision of the State of Florida, and at all material times defendant Miami Dade Police Department ("MDPD" or "defendant") operated as a department thereof. At all material times MDPD was plaintiff's "employer" as contemplated by Title VII and the FCRA.

## Satisfaction of Conditions Precedent

6. Plaintiff on or about October 26, 2012 filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which assigned it the EEOC Case Number 510-2013-00388, which filing also satisfied the filing requirements and perfected plaintiff's rights under the Florida Civil Rights Act.

7. Plaintiff on or about December 4, 2012 filed with the EEOC an Amended Charge of Discrimination in Case Number 510-2013-00388, which was also cross-filed with the Florida Commission on Human Relations ("FCHR").

8. Plaintiff requested a Notice of Right to Sue on May 22, 2013, which Notice was issued by the U.S. Department of Justice on July 29, 2013, within 90 days of which plaintiff brought this action.

9. The FCHR deferred its handling of the case to the EEOC without either conciliating or making a finding adverse to plaintiff within 180 days of her filing of the Charge of Discrimination, which failure to act satisfies plaintiff's exhaustion-of-administrative-remedies requirement and entitles her to maintain a civil action.

10. All other conditions precedent to the filing of this action have been performed or waived.

## General Allegations

11. Plaintiff began her career with the Miami Dade Police Department ("MDPD") in 1994.

12. MDPD employs more than 2,700 uniformed police officers in various ranks, including officers, sergeants, lieutenants and captains.

13. The Dade County Police Benevolent Association ("PBA") is a labor organization under Florida State Statutes and is the certified collective bargaining agent for its MDPD officer-members.

14. At all times material plaintiff was, and still is, an active member of PBA.

15. PBA represents members for collective bargaining, disciplinary matters, investigations and other law enforcement related issues.

16. Between October 1, 2008 and September 30, 2011 a collective bargaining agreement ("2008 CBA") was in effect between MDPD and PBA members. Article 18 Paragraph F of that agreement provides:

> The department will fill promotional vacancies within three (3) full pay periods of the promotional vacancy, effective no later than two full pay periods for payroll purposes however, this provision may be waived in the event of budgetary constraints or manpower shortages upon written notification to the Association.

17. Between October 1, 2011 and September 30, 2014 a collective bargaining agreement ("2011 CBA") was, and still is, in effect between MDPD and PBA members. Article 18 Paragraph F of that agreement provides:

> The department will fill promotional vacancies within three (3) full pay periods of the promotional vacancy, effective no later than two full pay periods for payroll purposes however, this provision may be waived in the event of budgetary constraints or manpower shortages upon written notification to the Association. A classified position becomes a vacancy at 0700 the day after separation by the incumbent from County service. This vacancy occurs only if there are no overages in the classification.

Separation shall be described as the day "T" shows or should show on the Payroll Attendance Record (PAR). The date a vacancy is effective in a higher bargaining unit classification will also be considered the effective date of vacancy for the subsequent promotions to be made behind the original vacancy. For example, if a Captain retires, a vacancy will also occur at the same time for a Lieutenant and Sergeant, providing there were no overages already in those classifications.

18. At all times material MDPD administered written bi-annual promotional examinations that officers were required to take to qualify for promotion to a higher rank.

19. MDPD requires candidates interested in taking the promotional examination for police lieutenant to have completed two continuous years of acceptable on-the-job performance as a police sergeant, achieved permanent status, and have a current performance evaluation with an overall satisfactory rating.

20. Candidates who pass the promotional examination for a particular classification are considered qualified for promotion by MDPD, and are placed on eligibility lists in descending order based on their written examination scores.

21. MDPD uses these eligibility lists in its selection process for promoting officers to fill positions as vacancies occur.

22. Plaintiff, who has held the rank of sergeant for the past ten years, met all the qualifying standards and began preparing for MDPD's lieutenant promotional examination in April 2009.

23. After months of studying and preparing, plaintiff took the exam in August 2009 and placed 6th out of 62 applicants, which put her in the top 10% and made her the highest scoring black female on MDPD's 2009 Lieutenant Eligibility List ("2009 List").

24. The 2009 List became effective on December 8, 2009, replacing the 2007 List, and remained in effect for the two-year period ending December 9, 2011, at which time it was replaced with the 2011 List.

25. On or about December 13, 2009, after the 2009 List became effective, MDPD promoted to lieutenant Amado Ojeda, a Hispanic male who did not qualify on the 2009 List and was ranked number 21 on the expired 2007 List.

26. During the two-year period the 2009 List was in effect, approximately 12 lieutenant positions became available, but MDPD refused to promote any black or Haitian-descent females from the list.

27. During the two-year period the 2009 List was in effect MDPD intentionally concealed and lied about vacant positions to deny black, female, and Haitian-descent candidates promotional opportunities.

28. On or about May 20, 2010, plaintiff asked MDPD Director James Loftus when he would begin promoting from the 2009 List to fill vacancies. Director Loftus in turn asked plaintiff what her rank was on the 2009 List, and then asked plaintiff whether she was religious, to which plaintiff affirmed.

Director Loftus then instructed plaintiff to pray for a promotion, and advised her that she would need all the help she could get.

29. On June 11, 2010 MDPD, through its employee Director Loftus, informed PBA that it would be unable to fill current vacancies of one captain, two lieutenants, and one sergeant due to budgetary constraints, and notified the PBA that MDPD invoked the waiver provisions of Article 18, Paragraph F of the controlling 2008 CBA.

30. On June 11, 2010, the date of Director Loftus's notification letter, the Miami-Dade County operating budget for fiscal year 2009-2010 was in effect.

31. Under the 2009-2010 fiscal operating budget, however, MDPD promoted at least three Hispanic males and one Hispanic female: Juan Rodriguez and Carlos Gonzales were promoted from sergeant to lieutenant on or about November 15, 2009; Amado Ojeda was promoted from sergeant to lieutenant on or about December 13, 2009, and; Nancy Perez was promoted from lieutenant to commander on or about April 26, 2010.

32. In December 2010, under the 2010-2011 fiscal operating budget there were at least seven lieutenant vacancies which MDPD refused to fill.

33. In a letter dated September 2, 2011 to the Board of County Commissioners, Mayor Carlos Gimenez explicitly stated that he was not recommending the elimination of any current service areas.

34. MDPD, through its employee Director Loftus, intentionally utilized the "waiver clause" of Article 18, Paragraph F of the 2008 CBA to deny black, female, and Haitian-descent candidates promotional opportunities.

35. On or about November 17, 2011 PBA filed a grievance alleging that MDPD failed to promote personnel to the rank of lieutenant as required by the 2008 CBA.[1]

36. Despite having the authority to extend the 2009 List, and notwithstanding the aforementioned grievance, on December 8, 2011 MDPD purposely allowed the 2009 List to expire without promoting any black or Haitian-descent females, although there were sufficient vacancies for such promotions.

37. The 2009 List had a greater number of black, female, and Haitian-descent candidates for promotion than did the 2011 List.

38. When MDPD allowed the 2009 List to expire on December 8, 2011 the Miami-Dade County operating budget for fiscal year 2011-2012 was in effect.

39. When MDPD implemented the 2011 List on December 9, 2011 the Miami-Dade County operating budget for fiscal year 2011-2012 was in effect.

40. After MDPD implemented the 2011 List – but while MDPD was still operating under the 2011-2012 fiscal year budget – it promoted approximately

---

[1] PBA filed a similar grievance on February 16, 2012 alleging failure to promote personnel to the rank of lieutenant as required by the 2011 CBA.

20 sergeants from the 2011 List to the rank of lieutenant.  Of the 20 promotions, only one officer was a black female.

41. MDPD, through its employees, used the 2011 List to fill lieutenant positions that became vacant when the 2009 List was in effect, which vacancies should have been filled using the 2009 List.

42. MDPD purposely promoted officers to the rank of lieutenant from the 2011 List with full knowledge of the pending grievances for lost promotional opportunities for officers on the 2009 List.

43. MDPD purposely and intentionally promoted candidates from the 2011 List to deny high-ranking black, female, and Haitian-descent candidates from the 2009 List promotional opportunities.

44. On October 25, 2012 plaintiff spoke with PBA representative Simone Lopez to inquire about the outstanding grievances and Simone Lopez explained that MDPD had agreed to settle the grievances by promoting four lieutenants.

45. The next day, on October 26, 2012, plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on race, sex, and national origin.

46. On or about November 16, 2012, MDPD and PBA held a meeting, during which meeting they discussed the outstanding grievances for officers from the 2009 List who were denied promotions to lieutenant and sergeant.

47. Thereafter, on or about November 30, 2012, MDPD promoted to lieutenant three Hispanic males from the 2009 List.

48. Under the previous lieutenant eligibility list (2007 List) MDPD promoted approximately 20 officers from sergeant to lieutenant. Of the 20 officers none were black or Haitian-descent females.

49. Under the subsequent lieutenant eligibility list (2011 List) MDPD promoted approximately 20 officers from sergeant to lieutenant. Of the 20 officers only one was a black female.

50. Under the 2009 List, on which list plaintiff placed 6th and was the highest scoring black female, MDPD promoted just three officers from sergeant to lieutenant – all three were Hispanic men.

51. MDPD promoted only three sergeants to lieutenant using the 2009 List because the 2009 List had a greater number of black, female, and Haitian-descent candidates for promotion than did the 2011 List.

52. Although plaintiff was the highest ranking black female from the 2009 List, MDPD purposely did not promote her when promotions were made from the 2009 List in November 2012.

53. On or about November 30, 2012, MDPD and PBA agreed to extend the 2011 List an additional year until December 9, 2014, in so doing MDPD ensured plaintiff, who is not on the 2011 List, would have to wait an additional year before she has an opportunity to again qualify for promotion.

54. MDPD intentionally extended the 2011 List to preclude plaintiff from promotion.

55. Upon information and belief, no person who was promoted from the 2007, 2009 or 2011 lists had filed a charge of discrimination or otherwise engaged in protected activity under Title VII or the FCRA.

### Count I: Race Discrimination in Violation of Title VII

56. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-8 and 10-55 above.

57. Defendant's treatment of plaintiff was motivated by plaintiff's race (black) and, thus, violated plaintiff's rights under Title VII of the Civil Rights Act of 1964.

58. Plaintiff's race was a motivating factor that influenced the decision not to promote plaintiff.

59. The actions of defendant affected plaintiff in the "compensation, terms, conditions and privileges of employment" as envisioned by 42 U.S.C. § 2000e-1(a)(1) and, thus, violated Title VII.

60. As a direct, natural, proximate and foreseeable result of defendant's actions, plaintiff has suffered lost wages and benefits, in the past and such losses will continue in the future, she has suffered emotional distress, inconvenience, embarrassment and other non-pecuniary damages and such damages will continue in the future.

61. The discrimination that plaintiff is suffering, in violation of her state and federal statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

62. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff prays that this Court will:

    a. issue a declaratory judgment that the discrimination against plaintiff by defendant was a violation of her rights under Title VII;

    b. enjoin defendant from continuing to violate the plaintiff's federally and statutorily protected rights and to make plaintiff whole;

    c. enter a judgment for plaintiff and award damages, including punitive damages;

    d. grant plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k); and

    e. provide any other relief that is appropriate.

## Count II: Gender Discrimination in Violation of Title VII

63. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-8, 10-55 and 59-62 above.

64. Defendant's treatment of plaintiff was motivated by plaintiff's gender (female) and, thus, violated plaintiff's rights under Title VII of the Civil Rights Act of 1964.

65. Plaintiff's gender was a motivating factor that influenced the decision not to promote plaintiff.

WHEREFORE, plaintiff prays that this Court will:

    a. issue a declaratory judgment that the discrimination against plaintiff by defendant was a violation of her rights under Title VII;

    b. enjoin defendant from continuing to violate the plaintiff's federally and statutorily protected rights and to make plaintiff whole;

    c. enter a judgment for plaintiff and award damages, including punitive damages;

    d. grant plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k); and

    e. provide any other relief that is appropriate.

**Count III: National Origin Discrimination in Violation of Title VII**

66. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-8, 10-55 and 59-62 above.

67. Defendant's treatment of plaintiff was motivated by plaintiff's Haitian descent and, thus, violated plaintiff's rights under Title VII of the Civil Rights Act of 1964.

68. Plaintiff's Haitian descent was a motivating factor that influenced the decision not to promote plaintiff.

WHEREFORE, plaintiff prays that this Court will:

      a.    issue a declaratory judgment that the discrimination against plaintiff by defendant was a violation of her rights under Title VII;

      b.    enjoin defendant from continuing to violate the plaintiff's federally and statutorily protected rights and to make plaintiff whole;

      c.    enter a judgment for plaintiff and award damages, including punitive damages;

      d.    grant plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k); and

      e.    provide any other relief that is appropriate.

## Count IV: Retaliation in Violation of Title VII

69.    Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-8, 10, 45-55, and 59-62 above.

70.    The adverse actions of defendant and its agents violated plaintiff's right to be protected against retaliation for engaging in protected activity, which retaliation is proscribed by Title VII.

71.    Plaintiff's protected activity was a motivating factor that prompted defendant not to promote plaintiff.

72.    The conduct of defendant discriminated against plaintiff with respect to compensation, terms, conditions, or privileges of employment because of plaintiff's protected activity.

WHEREFORE, plaintiff prays that this Court will:

    a.    issue a declaratory judgment that the discrimination against plaintiff by defendant was a violation of her rights under Title VII;

    b.    enjoin defendant from continuing to violate the plaintiff's federally and statutorily protected rights and to make plaintiff whole;

    c.    enter a judgment for plaintiff and award damages, including punitive damages;

    d.    grant plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k); and

    e.    provide any other relief that is appropriate.

### Count V: Race Discrimination in Violation of FCRA

73.    Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-55 and 60-61 above.

74.    Defendant's behavior towards plaintiff was based on her race and constituted race discrimination as proscribed by § 760.10(1), FLA. STAT. (2013).

75.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses against defendant pursuant to § 760.11(5), FLA. STAT. (2013).

WHEREFORE, plaintiff prays that this court will:

    a.    Issue a declaratory judgment that defendant's practices towards plaintiff violate plaintiff's rights against race discrimination under the FCRA;

  b. Enjoin defendant, its management employees and/or agents to cease discriminating against plaintiff because of her race;

  c. Enter a judgment for plaintiff and against defendant for damages, including punitive damages;

  d. Grant plaintiff her costs and a reasonable award of attorneys' fees pursuant to § 760.11(5), FLA. STAT. (2013); and

  e. Grant plaintiff such other and further relief as the circumstances and law require or provide.

### Count VI: Gender Discrimination in Violation of FCRA

76. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-55, 60-61, and 75 above.

77. Defendant's behavior towards plaintiff was based on her gender and constituted gender discrimination as proscribed by § 760.10(1), FLA. STAT. (2013).

WHEREFORE, plaintiff prays that this court will:

  a. Issue a declaratory judgment that defendant's practices towards plaintiff violate plaintiff's rights against gender discrimination under the FCRA;

  b. Enjoin defendant, its management employees and/or agents to cease discriminating against plaintiff because of her gender;

  c. Enter a judgment for plaintiff and against defendant for damages, including punitive damages;

   d. Grant plaintiff her costs and a reasonable award of attorneys' fees pursuant to § 760.11(5), FLA. STAT. (2013); and

   e. Grant plaintiff such other and further relief as the circumstances and law require or provide.

### Count VII: National Origin Discrimination in Violation of the FCRA

  78. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-55, 60-61, and 75 above.

  79. Defendant's behavior towards plaintiff was based on her Haitian descent and constituted national origin discrimination as proscribed by § 760.10(1), FLA. STAT. (2013).

  WHEREFORE, plaintiff prays that this court will:

   a. Issue a declaratory judgment that defendant's practices towards plaintiff violate plaintiff's rights against national origin discrimination under the FCRA;

   b. Enjoin defendant, its management employees and/or agents to cease discriminating against plaintiff because of her gender;

   c. Enter a judgment for plaintiff and against defendant for damages, including punitive damages;

   d. Grant plaintiff her costs and a reasonable award of attorneys' fees pursuant to § 760.11(5), FLA. STAT. (2013); and

   e. Grant plaintiff such other and further relief as the circumstances and law require or provide.

### Count VIII: Retaliation in Violation of the FCRA

80. Plaintiff realleges and incorporates the matters set forth in ¶¶ 1-10, 45-55, 60-61, and 75 above.

81. Plaintiff's protected activity was a motivating factor that prompted defendant not to promote plaintiff

82. The adverse actions of defendant and its agents violated plaintiff's right to be protected against retaliation for engaging in protected activity, which retaliation is proscribed by the FCRA.

WHEREFORE, plaintiff prays that this court will:

   a. Issue a declaratory judgment that defendant's practices towards plaintiff violate plaintiff's rights against discrimination under the FCRA;

   b. Enjoin defendant, its management employees and/or agents to cease discriminating against plaintiff because of her protected activity;

   c. Enter a judgment for plaintiff and against defendant for damages, including punitive damages;

   d. Grant plaintiff her costs and a reasonable award of attorneys' fees pursuant to § 760.11(5), FLA. STAT. (2013); and

   e. Grant plaintiff such other and further relief as the circumstances and law require or provide.

### Demand for Jury Trial

Plaintiff demands trial by jury on all issues so triable.

Dated: October 28, 2013	Respectfully submitted,

<p style="margin-left: 40%;">
<u>/s/ Karen Coolman Amlong</u><br>
KAREN COOLMAN AMLONG<br>
Florida Bar Number 275565<br>
KAmlong@TheAmlongFirm.com<br>
WILLIAM R. AMLONG<br>
Florida Bar Number 470228<br>
WRAmlong@TheAmlongFirm.com<br>
AMLONG & AMLONG, P.A.<br>
500 NE Fourth Street, Second Floor<br>
Fort Lauderdale, Florida 33301-1154<br>
Telephone (954) 462-1983<br>
Facsimile (954) 523-3192<br>
<br>
***Attorneys for Plaintiff***
</p>